597 So.2d 1163 (1992)
James Jackson BARBER
v.
Raymond LEE, Kenneth J. Ingram and State Farm Mutual Automobile Insurance Company.
Betty S. JONES, Individually and on Behalf of the Minor, Jason Jones[1]
v.
Raymond LEE, Kenneth J. Ingram, and John Veals.[2]
Nos. CA 91 0292, CA 91 0293.
Court of Appeal of Louisiana, First Circuit.
April 10, 1992.
Gregory J. Miller, Baton Rouge, for plaintiff-appellant Jason Jones.
Jeffery P. Robert, Baton Rouge, for The Travelers Ins. Co., third-party plaintiffs.
Darren S. Johnson, Baton Rouge, for defendant-appellee Raymond Lee.
Eugene A. Booth, Baton Rouge, for James Jackson Barber, cross-defendant.
Roy H. Maughn, Jr., Baton Rouge, for Bennie Veals, John Veals, and Robert Jackson, cross-defendants, third-party plaintiffs.
William F. Janney, Baton Rouge, for State Farm Mut. Auto. Ins. Co., third-party defendants.
Steve Joffrion, Gonzales, for Alex Chauffe, III, third-party defendant.
Charles A. Schutte, Jr., Baton Rouge, for Dairyland Ins. Co., third-party defendant.
John Santa Cruz, Patrick A. Talley, New Orleans, for Chevron U.S.A., Inc., third-party defendants.
Ann R. Hughes, Baton Rouge, for Kenneth Ingram, third-party defendant.
*1164 Before COVINGTON, C.J., and LeBLANC and WHIPPLE, JJ.
COVINGTON, Chief Judge.
A guest passenger who was injured in a collision between the Toyota pickup truck in which he was riding and a dump truck which was backing onto the highway appeals the summary judgment which dismissed one of the insurers named as a defendant from his suit. The insurer-appellee, The Travelers Insurance Company (Travelers),[3] was not the automobile liability insurer of any of the parties to this suit; rather, it was the homeowners insurer of the parents of a major child still living at home, who allegedly negligently flagged oncoming vehicles to warn of the dump truck's actions. For the reasons hereinafter stated, we affirm the summary judgment dismissing appellee from plaintiff's suit.

FACTS
The accident in question happened on December 10, 1985, at approximately 6:00 p.m. The plaintiff, Jason Jones, was a guest passenger in a pickup truck driven southbound by James Jackson Barber[4] on Greenwell Springs Road in East Baton Rouge Parish, Louisiana. At the same time, a dump truck owned by Raymond Lee and driven by Kenneth J. Ingram, neither of whom had any liability insurance, was engaged in backing from a private driveway onto Greenwell Springs Road. Plaintiff's petition alleged that John Veals "was called to the scene by the defendants, Raymond Lee or Kenneth J. Ingram for the purpose of assisting said defendants in repairing and backing the aforementioned vehicle and as a result thereof, committed acts of negligence which were the cause in fact of the accident and damages resulting therefrom...." In a supplemental and amending petition, plaintiff also named as defendant Bennie Veals, whom he alleged was doing business as "Bennie's Garage" and/or "Bennie's Snack"; he further alleged that Bennie Veals had been employed by defendant Lee to perform repair work on the dump truck, and that defendants John Veals and Robert Jackson were employed by Bennie Veals and sent by him to repair the vehicle owned by Lee. Jones asserted that Bennie Veals was liable under the theory of respondeat superior for the negligence of John Veals and Robert Jackson for their failure to warn oncoming traffic of the backing vehicle and for their failure to assure that it could be safely backed at that time, as it was proceeding under their direction.
Travelers filed a motion for summary judgment, asking that it be dismissed from plaintiff's suit because of language in the homeowners policy excluding coverage for incidents arising out of the ownership, maintenance or use of any motor vehicle. The trial court had previously granted Travelers a summary judgment on the same basis with regard to a third party demand against Travelers by the Veals and Robert Jackson. That dismissal from the third party demand was not appealed and is not before us. Travelers again obtained a summary judgment, this time dismissing it from plaintiff's demands, and this appeal followed.

LAW AND ARGUMENT
Appellant argues that the summary judgment was improperly granted because there was a genuine issue of material fact in dispute, i.e., whether John Veals was flagging the oncoming Toyota, or whether he was guiding the dump truck and not trying to "waive off the Toyota." Additionally, he argues that the trial court committed legal error in determining that John Veals' alleged actions constituted use of a motor vehicle sufficient to trigger the exclusionary *1165 language of the policy, which appellant further claims is unclear regarding whether the "used" vehicle must be owned by the homeowner.
Under LSA-C.C.P. art. 966, when a motion for summary judgment is made, "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law."
Travelers did not file opposing affidavits, although the record indicates that it did depose several of the parties with factual knowledge. However, these depositions are not contained in the record before us, and we have no knowledge of whether they were filed in the record in district court. Instead, Travelers appears to have relied primarily on its arguments regarding the effect of the exclusionary language in its policy, treating the questions of law as dispositive. We agree with this approach. The crux of this appeal is whether, as a matter of law, based on the record, coverage for either version of John Veals' alleged actions is excluded by the motor vehicle use exclusion in Travelers' policy.[5]
This court recently reviewed the factors and criteria to be considered in a case such as this in Manuel v. Luckett, 577 So.2d 203 (La.App. 1st Cir.), writ denied, 580 So.2d 378 (La.1991), as follows:
To determine whether the automobile use exclusion applies, we must answer both of these questions affirmatively: (1) whether the conduct of the insured of which the plaintiff complains was a legal cause of injury? (2) whether it was a use of the automobile? Carter v. City Parish Government of East Baton Rouge, 423 So.2d 1080 (La.1982); Jones v. Louisiana Timber Co., Inc., 519 So.2d 333 (La.App.2d Cir.1988). To decide whether the insured's conduct was a legal cause of the accident, we must use duty-risk analysis. Carter, 423 So.2d at 1087. In deciding the issue of whether the risk resulting in a person's harm was within the duty imposed on an alleged tortfeasor, we answer two principal questions: (1) was the conduct complained of a cause in fact of the harm? (2) was the alleged tortfeasor under a duty to protect against the particular risk involved? Carter, 423 So.2d at 1084. As to the second requirement, in order for the harm to arise out of use, the automobile must be essential to the theory of liability. Picou v. Ferrara, 412 So.2d 1297 (La.1982). The specific duty breached by the insured must flow from the use of the automobile. Jones, 519 So.2d at 336. If the specific duty breached by the insured existed independently of the automobile, then liability does not arise out of use even though the duty could have been performed by use of an automobile. Massey v. Century Ready Mix Corp., 552 So.2d 565 (La.App.2d Cir.1989), writ denied, 556 So.2d 41 (La.1990); Jones, 519 So.2d at 336.
577 So.2d at 207.
In Manuel, a motorist was injured when a sheriff's deputy who was answering a radio call drove through an intersection in disregard of a red traffic light, allegedly at a high rate of speed, and improperly passed a vehicle in the intersection. The motorist was injured in the resulting collision. The motorist and his wife filed suit against the deputy and the sheriff, among others, alleging that the sheriff was responsible not only under the theory of respondeat superior for his employee's negligence in driving, but also for the negligent training of both that deputy and the deputy who improperly dispatched the call under an incorrect code.
This court found that there were two distinct theories of liability put forth by plaintiff, and that the automobile use exclusion applied to the first theory, i.e., liability for his deputy's negligent driving, to prevent coverage under the sheriff's excess *1166 insurance policy, which incorporated language from the primary sheriff's risk management policy. However, we found that the exclusion did not apply to prevent coverage for the second theory of liability, the sheriff's negligent training of both the radio dispatcher regarding coding calls and the deputy who drove the vehicle in question.
In the case at bar, unlike in Manuel, the plaintiff advances only one theory of liability; that is, he argues that Travelers is liable under its homeowners policy because a major child of the named homeowner, still residing at home, negligently flagged either the backing dump truck or the oncoming Toyota, and failed to adequately warn oncoming traffic of the impending hazard in the roadway. We will analyze this theory of liability.
Assuming for the purpose of the motion for summary judgment that John Veals was either flagging the Toyota (oncoming traffic) or signalling to the backing dump truck, such action would constitute a cause in fact of the accident. If he was improperly signalling the oncoming traffic to proceed when it was unsafe to do so because the dump truck was in the act of backing, then this conduct was a cause in fact of the accident. If he was improperly signalling the dump truck to back onto the highway when he had not ascertained that it was safe to do so, then this conduct was a cause in fact of the accident.
Our next step must be to determine whether John Veals had a duty to protect against the particular risk involved by his alleged actions. We have no difficulty in finding that he did have such a duty as a result of undertaking the responsibility of signalling either vehicle. It is immediately foreseeable that a driver who innocently responds to an improper signal will encounter the risk of collision with another vehicle; indeed, it is precisely such a risk that a driver who must rely on the signal of another hopes to avoid. Thus, we find that John Veals' alleged conduct constituted a legal cause of plaintiff's injuries.
With regard to the second part of the analysis, whether the conduct in question constituted a use of the automobile, we must also answer affirmatively. However one views the incident, the dump truck in this instance is essential to the theory of liability on the part of Travelers for John Veals' alleged actions. Without the dump truck, there would have been no occasion for Veals to either warn oncoming traffic or to direct Kenneth Ingram onto the highway. There would have been no accident.
The specific duty allegedly breached by Veals likewise clearly flows from the use of the dump truck. If his duty was to warn oncoming traffic of a temporary obstruction of the roadway, and that obstruction was the dump truck, then the duty must flow from the use of the dump truck. The exclusionary language of the policy in question is as follows:
These exclusions apply to all coverages. They are in addition to those listed under Coverages N and O. Other exclusions or limitations may be found where they apply to a specific coverage. This insurance does not cover certain situations.
. . . . .
7. It does not cover bodily injury or property damage arising out of the ownership, maintenance or use of any aircraft or any motor vehicle.
[Emphasis original.]
Appellant's argument that the motor vehicle being used must also be owned by the insured is clearly not supported by the language of Travelers' policy, which excludes coverage for accidents resulting from the use of any motor vehicle, whether owned or non-owned. We find no affront to public policy by such a provision. Homeowners insurance is not intended or designed to encompass damages arising out of a collision between two motor vehicles.
The final question in the analysis must be to determine whether the specific duty breached by the insured existed independently of the motor vehicle. We find in this instance that it did not. If Veals voluntarily undertook to either signal the backing dump truck or warn oncoming traffic of the backing dump truck, as alleged, then without the dump truck, there *1167 would be no duty, no risk, and no negligence.
Our brethren in other circuits have been presented with similar situations and have likewise determined that vehicles not being driven by the tortfeasor at the time of the accident, but which were the object of some type of interaction by one or more tortfeasors, were "in use." In Massey v. Century Ready Mix Corporation, previously cited by this court in Manuel with approval, as our excerpt from Manuel indicates, a general liability insurer of a subcontractor was sued when one of the subcontractor's drivers backed his 18-wheeler into a partially constructed building, knocking an iron worker who was approximately 40 feet off the ground off the structure. One of the theories of liability advanced by the plaintiff was that another employee of the subcontractor who had previously driven his 18-wheeler to the site had failed to warn the second driver of the dangerous situation or to act as his flagman. The plaintiff contended that this first driver's negligence did not involve the use of an automobile, and therefore, did not fall under the automobile use exclusion of the general liability insurer's policy.
In rejecting the plaintiff's argument, the Massey court stated:
In the instant case, the first driver could not have breached his duty to flag or warn the second driver had the second driver not been using the Century vehicle. Because this first driver's duty depended on the use of the Century vehicle, the vehicle is a common and essential element in the plaintiff's theory of liability, and therefore excluded under Ohio General's auto exclusion. In the terms of our Carter, the duty at issue is "not independent" of the vehicle that caused the accident.
552 So.2d at 570.
The court likewise rejected the plaintiff's argument that "only the use of the `insured' operating the truck which hit the column is excluded from the policy." It stated:
This contention fails for basically the same reasons outlined above with respect to the previous contention. The fact that the insurance afforded applies separately to each insured is irrelevant.... Any asserted negligence on the part of the second driver (by failing to warn or to flag) is dependent on the use of the truck which hit the column and cannot, in our judgment, be separated from it.
552 So.2d at 570.
The Fourth Circuit addressed whether a vehicle which was not being driven at the time by the tortfeasors was "in use" in Hellmers v. Department of Transportation and Development, 503 So.2d 174 (La. App. 4th Cir.), writs denied, 505 So.2d 1141, 1149 (La.1987). In that instance, a motorist was killed when she swerved into the opposing lane of travel in order to avoid an obstruction in the highway created by a DOTD truck, which was parked and totally blocking the lane in which the motorist had been travelling. DOTD employees had deliberately parked the truck in such a manner to block traffic so that work could be performed on a bridge, but failed to placed the required warning signs along the highway preceding the site or to provide two flagmen to signal traffic. Travelers in that case was the liability insurer of the DOTD truck, and argued that the vehicle was not in use within the meaning of the policy's language. That court stated:
We disagree. The truck was being used both to block the highway and as a part of the warning system, however inadequate, implemented by the DOTD employees. The employees testified that the truck's engine and light were left on and that they kept various tools they might need in the truck. Several DOTD officials testified that it was normal for the truck to be used in this manner. Therefore, we find that the DOTD truck was "in use" at the time of the accident so as to afford coverage under the Travelers policy.
503 So.2d at 179.
Thus, in both Massey and Hellmers, use of a vehicle extended to activities other than driving, and even included interaction which did not necessitate actual physical contact with the vehicle by the tortfeasors at the time of the accidents.
*1168 In the instant case, under the analysis mandated by the jurisprudence to determine whether Travelers' motor vehicle use exclusion in its homeowners policy applies, we find as a matter of law that the accident arose out of the use of a motor vehicle, and thus would not be covered by Travelers' policy. The district court's decision granting the motion for summary judgment and dismissing Travelers from plaintiff's demands is affirmed. Costs of this appeal are assessed to plaintiff-appellant.
AFFIRMED.
NOTES
[1] Jason Jones reached the age of majority during the pendency of proceedings in the trial court and was thereafter substituted as party plaintiff.
[2] Additional defendants, including the appellee herein, The Travelers Insurance Company, were named in two amending and supplemental petitions filed by the plaintiff. Of these additional parties, only Travelers, John Veals, and Bennie Veals are relevant to this appeal.
[3] The record indicates that one of Travelers' subsidiary companies, The Phoenix Insurance Company, actually issued the homeowners policy in question. However, since Travelers is appearing on behalf of itself and its subsidiary in this matter, we will simply refer to the homeowners insurer as Travelers.
[4] Mr. Barber is the plaintiff in the companion case consolidated with this one in the trial court. However, his claim is not before us at this time; therefore, our use of "plaintiff" and "appellant" refers only to Jason Jones.
[5] We do not address the issue of coverage for a homeowner's major child, or the alleged liability of Bennie Veals under the theory of respondeat superior for the actions of alleged employees, because the issue of whether the motor vehicle use exclusion applies in this instance is dispositive of the case.