943 So.2d 423 (2006)
Gary and June SIMMONS, Individually and as Natural Tutor/Tutrix of Their Minor Children, Ellen Simmons and Miranda Simmons
v.
Byron WEIYMANN, John Doe and Jane Doe, as Natural Parents and Tutor/Tutrix of the Minor Child, Candace B. Braden, and American Western Home Insurance Company.
No. 2005 CA 1128.
Court of Appeal of Louisiana, First Circuit.
August 23, 2006.
*424 Shawn C. Reed, Hope E. Robertson, Charles C. Collins, Howard, Reed & Taylor, Covington, for Plaintiffs-Appellants Gary and June Simmons, et al.
Charles J. Foret, Briney & Foret, Lafayette, for Defendant-Appellee American Western Home Ins. Co.
Before: PARRO, McDONALD, and HUGHES, JJ.
PARRO, J.
The plaintiffs appeal a judgment granting a motion for summary judgment in favor of an insurer on the basis that an exclusion in the homeowner's liability insurance policy precluded coverage for the plaintiffs' claims against their insured. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND
Candace B. Braden, a minor, was driving a "four-wheeler" on a roadway with her younger sister and two other children, Ellen and Miranda Simmons, as passengers. Braden did not stop at the stop sign at an intersection, entered the cross street to turn the corner, and collided with an automobile on that street. The Simmons children were injured in the accident. Their parents sued, among others, the owner of the four-wheeler, Byron Weiymann, and his homeowner's liability insurer, American Western Home Insurance Company (American), alleging that Weiymann's negligent supervision of the children was a cause of the accident.
American answered the petition, admitting it insured Weiymann under a liability insurance policy, but generally denying the remaining allegations. American later filed a motion for summary judgment, claiming coverage was precluded under a policy exclusion for bodily injury or property damage "arising out of the ownership, maintenance, use, loading or unloading of . . . a motor vehicle owned or operated by, or rented or loaned to any insured person. . . ." The trial court agreed with this position, and granted summary judgment in favor of American, dismissing the plaintiffs' claims against it. In this appeal, the plaintiffs contend this conclusion was legal error, because their cause of action against Weiymann did not arise out of his ownership or use of the motor vehicle, but was a distinct cause of action based on his negligent supervision of children who had been entrusted to his care.

APPLICABLE LAW
An appellate court reviews a district court's decision to grant a motion for summary judgment de novo, using the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Smith v. Our Lady of the Lake Hosp., Inc., 93-2512 (La.7/5/94), 639 So.2d 730, 750. Summary *425 judgment shall be rendered if there is no genuine issue as to material fact and the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B). A summary judgment may be rendered on the issue of insurance coverage alone, although there is a genuine issue as to liability or damages. See LSA-C.C.P. art. 966(E); Bilbo for Basnaw v. Shelter Ins. Co., 96-1476 (La.App. 1st Cir.7/30/97), 698 So.2d 691, 694, writ denied, 97-2198 (La.11/21/97), 703 So.2d 1312. When the issue before the court on the motion for summary judgment is one on which the party bringing the motion will bear the burden of proof at trial, the burden of showing there is no genuine issue of material fact remains with the party bringing the motion. See LSA-C.C.P. art. 966(C)(2); Buck's Run Enterprises, Inc. v. Mapp Const., Inc., 99-3054 (La.App. 1st Cir.2/16/01), 808 So.2d 428, 431. An insurer seeking to avoid coverage through summary judgment bears the burden of proving some exclusion applies to preclude coverage. See McMath Const. Co., Inc. v. Dupuy, 03-1413 (La.App. 1st Cir.11/17/04), 897 So.2d 677, 681, writ denied, 04-3085 (La.2/18/05), 896 So.2d 40; Collins v. Randall, 02-0209 (La.App. 1st Cir.12/20/02), 836 So.2d 352, 354.
An insurance policy is a contract between the parties and should be construed employing the general rules of interpretation of contracts set forth in the Louisiana Civil Code. Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94), 634 So.2d 1180, 1183. Words and phrases used in a policy are to be construed using their plain, ordinary, and generally prevailing meaning, unless the words have acquired a technical meaning. LSA-C.C. art. 2047. Where the language in the policy is clear, unambiguous, and expressive of the intent of the parties, the agreement must be enforced as written. See LSA-C.C. art. 2046.
The purpose of liability insurance is to afford the insured protection for damage claims. Policies therefore should be construed to effect, and not to deny, coverage. Thus, a provision which seeks to narrow the insurer's obligation is strictly construed against the insurer, and if the language of the exclusion is subject to two or more reasonable interpretations, the interpretation which favors coverage must be applied. Reynolds, 634 So.2d at 1183. However, subject to the above rules of interpretation, insurance companies have the right to limit coverage in any manner they desire, so long as the limitations do not conflict with statutory provisions or public policy. Reynolds, 634 So.2d at 1183. The rule of strict construction does not authorize a perversion of language or the exercise of inventive powers for the purpose of creating an ambiguity where none exists. Nor does it authorize courts to alter the terms of policies under the guise of contractual interpretation when the policy provisions are couched in unambiguous language. Doiron v. Louisiana Farm Bureau Mut. Ins. Co., 98-2818 (La. App. 1st Cir.2/18/00), 753 So.2d 357, 363.

DISCUSSION
The policy exclusion on which American relies in this case states:
Under Personal Liability Coverage and Medical Payments to Others Coverage, we do not cover bodily injury or property damage:
* * *
(g) arising out of the ownership, maintenance, use, loading or unloading of:
* * *
ii. a motor vehicle owned or operated by, or rented or loaned to any insured person. . . .
*426 The first issue before the court on this appeal is whether the bodily injuries suffered by the Simmons children arose out of the use of a motor vehicle owned by Weiymann, thereby implicating this policy exclusion. As the trial court noted, common sense answers that question in the affirmative. The American policy defines motor vehicle as:
[a]ny motorized land conveyance of any type, regardless of whether or not it is licensed for road use or whether the motorized land conveyance is made for use on or off public roads. The term "motor vehicle" shall include . . . allterrain vehicles. . . .
The four-wheeler being used by the children meets this definition. It was owned by Weiymann and the injuries to the children occurred as they were riding in that motor vehicle and collided with another motor vehicle. Therefore, under the unambiguous language of the policy, the Simmons children's injuries clearly "arose out of the use of a motor vehicle" owned by the insured.
However, the plaintiffs contend that they have alleged a separate and distinct cause of action against Weiymann that was not due to his negligent use of a motor vehicle, as he obviously was not using the motor vehicle when the accident occurred. Rather, the claim against him was due to his negligence in supervising the minor children left in his care, custody, and control. They argue that it was mere coincidence that the injury-causing mechanism in this case was a motor vehicle; had any other mechanism caused injury to the children due to Weiymann's negligent supervision of them, coverage would be provided under the American policy. Therefore, the more difficult issue for this court is whether a claim of negligent supervision is a separate and distinct theory of liability covered by the policy, regardless of this policy exclusion. The courts of this state have grappled with this issue and, in some cases, have concluded that the automobile use exclusion was not applicable to such independent theories of liability. Therefore, we must review the jurisprudence in order to determine whether, under the facts of this case, this policy exclusion applies.
The most recent case addressing this issue is Howell v. Ferry Transp., Inc., 04-2057 (La.App. 4th Cir.3/29/06), 929 So.2d 226. In Howell, a tractor-trailer rig struck two vehicles, killing some of the occupants of those vehicles and injuring others. A comprehensive general liability policy issued to the company that owned the tractor-trailer rig included an automobile use exclusion. The plaintiffs contended that the use of a motor vehicle was only one cause of their injuries, and that the company's negligent hiring practices and negligent supervision of the driver, its employee, were independent sources of liability. The Fourth Circuit held that the automobile use exclusion barred coverage, because the use of the motor vehicle was an essential element of the plaintiffs' theory of liability, citing Picou v. Ferrara, 412 So.2d 1297 (La.1982), and Calvin v. Janbar Enterprises, Inc., 03-0382 (La.App. 4th Cir.9/24/03), 856 So.2d 88, writ denied, 03-3102 (La.1/20/04), 865 So.2d 92, and overruling Smith v. USAA Cas. Ins. Co., 532 So.2d 1171 (La.App. 4th Cir.1988). Howell, 929 So.2d at 231.
Picou was a case involving a motorcyclist who was injured in a motor vehicle accident and sued the driver of the other vehicle and his employer. The employer's comprehensive general liability insurer invoked the automobile use exclusion of its policy, and this was upheld against the claim that a separate and distinct cause of action for negligent hiring was covered under the policy. The supreme court reasoned *427 that regardless of the theory of liability, liability for all injuries arising out of the use of automobiles was specifically excluded. Therefore, if the injuries were caused by the use of an automobile, that use was an essential element of the theory of liability and there was no coverage under the policy. Picou, 412 So.2d at 1300.
In Calvin, the parents of a child struck by a truck sued the driver, his employer, and the employer's comprehensive general liability insurer, alleging coverage under the theory that negligent hiring and supervision of the driver was a cause of the accident. The court applied the automobile use exclusion, reasoning that use of the vehicle was an essential element to the theory of liability and stating, "Without the motor vehicle, this accident, as tragic as it was, would not have occurred." Calvin, 856 So.2d at 91.
The facts in the Smith case are strikingly similar to those in the matter before us, as it involved minors who were injured while driving recreational vehicles. The court in Smith refused to apply the automobile use exclusion and found coverage under the homeowners' liability policy for the separate assertion against the homeowners that they were negligent in supervising the minors who were operating the recreational vehicles. There the court found that a policy exclusion for the operation of a vehicle was not applicable where the asserted negligence was independent of the vehicle's operation. Smith, 532 So.2d at 1174. As previously noted, the Smith holding was overruled in the Howell case.
In Otwell v. State Farm Fire & Cas. Co., 40,142 (La.App. 2nd Cir.10/26/05), 914 So.2d 100, the court concluded that even if the homeowners' failure to supervise their son was a legal cause of the accident in question, coverage was excluded because the use of a motor vehicle was essential to the asserted theory of liability. Because no personal injuries would have resulted to the plaintiffs without the actual use of the automobile by their son, the automobile use exclusion of their homeowners' liability insurance policy barred coverage. Otwell, 914 So.2d at 106.
The Second Circuit reached a similar conclusion in Yagel v. Sanders, 26,778 (La. App. 2nd Cir.4/5/95), 653 So.2d 170, in which a person was struck by boards that fell from the back of a pickup truck. Suit against the homeowner's insurer of the driver of the pickup truck was dismissed on the basis of the automobile use exclusion, despite the plaintiffs' argument that their cause of action, which alleged the driver's negligence in choosing to use the pickup truck, rather than a larger truck that he owned, was an aspect of negligence separate and distinct from his loading and use of the pickup truck.
In Gedward v. Sonnier, 97-1068 (La. App. 3rd Cir.5/20/98), 713 So.2d 770, the homeowner's minor child was injured while driving an ATV. The Third Circuit concluded that the circumstance of the minor being injured while using an ATV was incidental to the father's breach of duty to supervise the child and did not apply the automobile use exclusion to bar coverage. The supreme court granted writs and reversed in part on different grounds, finding ambiguity in the policy definitions and concluding that the ATV, which in that case was not owned by the father, was not clearly included as a "motor vehicle" within the automobile use exclusion of the policy under those facts. Therefore, the policy exclusion was ambiguous and would not be applied. Gedward v. Sonnier, 98-1688 (La.3/2/99), 728 So.2d 1265, 1269.
This court, in Martello v. State Farm Fire & Cas. Co., 96-2375 (La.App. 1st Cir.11/7/97), 702 So.2d 1179, writ denied, 98-0184 (La.3/20/98), 715 So.2d 1215, applied *428 the automobile use exclusion of a homeowners' liability insurance policy and denied coverage to the parents of a child who was fatally injured in an automobile accident. The vehicle in which the child was riding was being driven by the homeowners' son when the accident occurred. The court stated:
The Martellos argue that the general liability section of the Welborns' homeowner's policy covers negligent supervision of the teenagers. If such a broad interpretation were given to negligent supervision, it would subsume, and write out of the homeowner's insurance policy, all of the exclusions. Further, it would substitute a homeowner's insurance policy for automobile liability insurance.
Martello, 702 So.2d at 1182-83. In reaching its conclusion, this court cited Edwards v. Horstman, 96-1403 (La.2/25/97), 687 So.2d 1007, and distinguished Frazier v. State Farm Mut. Auto. Ins. Co., 347 So.2d 1275 (La.App. 1st Cir.), writ denied, 351 So.2d 165 (La.1977).
In Edwards, a passenger who was injured by a gunshot fired from another vehicle sued the driver of the convertible in which she was riding, along with his homeowner's liability insurer. Even after seeing the weapon, the driver of the convertible had deliberately pulled alongside the vehicle from which the shot was fired. The supreme court stated that for conduct to constitute "use" of an automobile, such that the automobile use exclusion would be applicable, that conduct must be essential to the defendant's liability and the specific duty breached by the insured must flow from use of the automobile. Finding that both criteria were met under these facts, the court concluded that the automobile use exclusion in the homeowner's insurance policy precluded coverage. Edwards, 687 So.2d at 1012.
In Frazier, a couple was caring for a toddler in their home. The child was playing in their driveway and was injured when their minor daughter hit the child while driving their car. The automobile use exclusion in the couple's homeowners' liability policy was asserted as a bar to coverage, and an exception raising the objection of no cause of action was sustained in the district court. In an abbreviated opinion reversing that judgment, this court held that the negligent supervision cause of action against the couple as it pertained to the supervision of the toddler in their care was distinct from the claim involving their daughter's negligent use of their motor vehicle, stating, "Republic could be held liable for the alleged negligence of the [homeowners] even though, under the exclusionary clause, it does not afford coverage for the operation of the motor vehicle." Frazier, 347 So.2d at 1276.
In a respected commentary on the issue of what constitutes "use" of an automobile, the authors noted that although liability might be premised on negligent failure to supervise a child, if an underage and inexperienced person is permitted to operate a motor vehicle, then liability for that negligent entrustment arises out of use of the motor vehicle. See William Shelby McKenzie and H. Alston Johnson, III, Insurance Law and Practice § 72, at 208, in 15 Louisiana Civil Law Treatise (2nd ed.1996). The authors also criticized the Smith decision, which has since been overruled, and distinguished the Frazier decision, noting that the child being supervised by the insureds in Frazier was not using the automobile; the child's only relationship to the auto was being struck by it. By contrast, the children in the Smith case were using the recreational vehicles, and any breach of duty by the insured clearly arose solely out of the failure to supervise such use. Thus, use of the vehicle was essential to the theory of liability. The *429 authors noted that such breach of duty is analogous to the negligent entrustment discussed in Picou, in which the supreme court found that the breach arose out of use because the vehicle was essential to the theory of liability. Id. at 206 n. 2. We note also that in Picou, the supreme court itself distinguished the Frazier case, stating that:
Since there was an accident on the [homeowners'] property, which was protected by Republic's homeowners policy, there was a cause of action against the insurer for any injuries that were (sic) happened at [their] home. Use of the automobile was not essential to such a theory of liability [negligent supervision] for injury to a child on the premises. The automobile was an essential fact of the accident, but only incidental to the theory of liability under the homeowners policy.
Picou, 412 So.2d at 1300. In an accompanying footnote, the court observed that there are no reported decisions dealing with the litigation in Frazier following the remand by the court of appeal. Picou, 412 So.2d at 1300 n. 2.
Based on our review of the extensive and sometimes inconsistent jurisprudence concerning this issue, only a portion of which has been summarized above, we conclude that under the facts of this case, the automobile use exclusion barred coverage for the plaintiffs' claims, all of which were based on the personal injuries of the Simmons children. In this case, not only was the use of Weiymann's motor vehicle the direct cause of the children's injuries, but the children were riding in it, thus using that motor vehicle, when the accident occurred. The only relevant duty allegedly breached by Weiymann was his failure to supervise children who were actually using his four-wheeler by driving it and riding in it. Therefore, the use of the four-wheeler was an essential element of the cause of action for negligent supervision under the facts of this case, and the automobile use exclusion of the American policy is applicable.

DECREE
Based on the foregoing, we affirm the judgment of the district court. All costs of this appeal are assessed to Gary and June Simmons.
AFFIRMED.
HUGHES, J., dissents with reasons.
McDONALD J., concurs.
HUGHES, J., dissenting.
I respectfully dissent. Insurance policies insure against negligent acts. The issue before us is not whether the four wheeler was operated in a negligent manner, but rather, whether the defendant was negligent in his supervision of the children. The alleged tortfeasor is the adult, not the minors. The instrumentality of the injury is irrelevant.